MARTIN M. PETERSON, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

RAILROADS: Reasonable Crossings Per Se. A railway crossing
1    with planks extending three inches above the dirt approach of
the public highway is *per se* a reasonably safe crossing.

RAILROADS: Neglect in Crossing Maintenance. Railway crossings
2    which are reasonably safe for travel in the usual and ordinary
way are all-sufficient, and on a fact issue as to negligence in
maintaining such crossing, it is error for the court to fail to
explain to the jury the nature and extent of the company's duty.

NEGLIGENCE: Undisputed Facts. Undisputed facts bearing on
3    negligence present questions of law for the court.

*Appeal from Clay District Court.—N. J. LEE, Judge.*

JANUARY 27, 1919.

ACTION to recover damages for injury to property. The opinion states the facts. Verdict and judgment for the plaintiff in the court below. Defendant appeals.—*Reversed and remanded.*

*Hughes, Sutherland & O'Brien* and *J. W. Cory & Son,* for appellant.

*R. F. Mitchell* and *Cornwall & Cornwall,* for appellee.

GAYNOR, J.—On the 15th day of December, 1915, the plaintiff was driving a Buick automobile on a public high-way. This highway crossed the tracks of the defendant company at right angles. Defendant's tracks run east and west, and the highway, north and south. Plaintiff approached the track from the south, and, when within about 200 feet of the track, he saw the head-light of a train approaching from the east. He did not, however, stop his car, but proceeded at about 10 miles an hour, keeping a constant lookout for the train, and saw the train just as he went upon the track. It was then about a mile and a half away. He says that, as he was in the act of crossing the track, his engine died, and left him with the front wheels over the far rail, and the hind wheels up against the first rail. He claims that, after his engine died, he made an effort to start it by cranking, but failed, tried to push it from the track, and failed, and then went 75 to 80 feet towards the approaching train, and flagged it with a red handkerchief; that, notwithstanding this, the train continued on until it reached the point where the automobile was, struck the automobile, pushed it off the track, and greatly damaged it. It is to recover this damage that he brings this action. The negligence charged is:

(1) That the defendant failed to maintain a safe high-way crossing at the place where the injury occurred; that the crossing planks on either side of the rails were several

1. RAILROADS: reasonable crossings *per se.*

inches above the level of the highway, and rendered the crossing dangerous and unsafe for one traveling in an automobile; that, as a proximate result of this negligence, his car received a sudden jolt or jar in attempting to cross, which caused the engine to die, and remain upon the tracks.

(2) That the servants of the defendant in charge of the train failed to keep a proper lookout, in approaching the crossing, to discover plaintiff's automobile upon the crossing, and failed to stop the train in time to avoid the injury; that, if they had kept such a lookout, they would have discovered plaintiff, and the peril in which his car was placed, and could and would have avoided the injury.

(3) That they knew, or by the exercise of reasonable diligence should have seen and known, that plaintiff's automobile was standing upon the crossing, in a place of danger, in time to have stopped the train and avoided the collision, and failed to exercise reasonable care, after discovering plaintiff's peril, to stop the train.

At the conclusion of the evidence, the defendant moved to withdraw the first charge of negligence from the consideration of the jury, on the theory that there was no evidence that the crossing was defective, and, therefore, no basis for the charge of culpable negligence on account of the construction and then condition of the crossing. This motion was overruled, and the court proceeded to submit the same to the jury.

After the instructions were prepared and submitted to counsel, counsel for the defendant again objected to the submission of the claim that the crossing was defective, or that the defendant had failed to maintain a safe and sufficient crossing, for the reason that there was no evidence tending to support a claim of negligence predicated on that issue. The court, however, ignored this objection also, and proceeded to say to the jury, among other things, that the plaintiff claimed that the defendant railway company and

its employees were negligent in the following particulars:

"(1) In that the defendant failed to maintain a safe highway crossing at said place, because of the fact that the planks of the crossing and the rails of defendant's track at said crossing were several inches above the level of the approach to said crossing.

"(2) In that the servants, agents, and employees in charge of the train failed to keep a proper lookout in approaching said crossing, and in failing to stop said train in time to avoid the collision.

"(3) In that the agents, employees, and servants of the defendant company in charge of said train saw or knew, or by the exercise of reasonable diligence should have seen and known, that plaintiff's automobile was standing upon said crossing and in a place of danger in time to have stopped the train and avoided the collision and injury to said car; and that the said agents, employees, and servants of the defendant at that time knew, or by the exercise of reasonable care should have known, that said automobile would be destroyed unless the train was stopped before striking the same; and that they failed to stop said train in time to avoid said collision with the said automobile.

"The plaintiff alleges that, in attempting to cross over said crossing, his car and engine became stalled because of the jar it received from the said uneven condition of said crossing and approach; and the plaintiff alleges that the said negligence of the defendant, as aforesaid, was the proximate cause of the collision with said automobile and its destruction.

"The defendant admits that it is a corporation, but denies each and every other claim and allegation made by the plaintiff, and especially denies that it was guilty of any negligence as claimed by the plaintiff."

In the next instruction, the court said:

"In the foregoing instruction I have given you the matters in dispute between the parties which you are required to decide;" and in the 13th instruction said that, if the servants of the defendant company were guilty of *any acts* of negligence complained of by the plaintiff, then the defendant would be guilty of negligence."

We set out so much of the court's charge to the jury, because it is strenuously contended by plaintiff that the court did not submit, as a basis for recovery, the charge that the crossing was defective, and for the further reason that defendant bases error on its submission.

It is apparent, although it is controverted, that the court did submit to the jury negligence predicated upon the unsafe condition of the crossing, and did say to the jury

2. RAILROADS:
neglect in
crossing main-
tenance.

that, if the defendant was negligent in respect to the crossing, its unsafe condition, etc., and this negligence was the proximate cause of the injury, then the plaintiff could recover. Nowhere, in the instructions given, did the court tell the jury what the duty of the defendant was with respect to maintaining a crossing. Nowhere, after stating the issues, did the court again refer to this particular claim of negligence as a claim upon which they could predicate negligence, nor did the court inform the jury in any way as to what the duty of the company was, with respect to the maintenance of crossings.

Negligence presupposes a duty, a duty owed to the public generally, or a duty owed to the individual complaining. It is the violation of the duty that constitutes the negligence. The duty is imposed by law in this case. Section 2054 of the Code of 1897 provides that every railway shall construct, at all points where such railway crosses any public road, good, sufficient, and safe crossings.

When the facts upon which negligence is predicated are proven, and these may or may not establish negligence,

then it becomes the duty of the court to instruct the jury fully as to what the law is, applicable to the facts proven, so that the jury, in considering the facts, may know whether, under the law, negligence can be predicated upon the facts proven. This is not always true, because some acts, when proven, are in themselves such a gross violation of duty known and appreciated by all men that the sense of the jury will readily see the relation between the facts proven and the duty existing. But where the duty is imposed strictly by law, as in this case, by statute, then it becomes the duty of the court to tell the jury what the law is, applicable to the facts proven, so that the jury may know whether or not the party charged has, by doing or omitting to do the things charged, violated any duty which he owed to the complaining party or to the public generally. Even if this issue, under the evidence, was one upon which the jury could properly predicate liability, yet there was palpable error in the manner of its submission. Assuming, in the first place, that this issue was an issue which, under the record, the jury might consider in determining the liability of the defendant as for negligence, we have to say that, in its submission, the court committed palpable error, in this: that it failed to state to the jury, in any way, what the law is, touching the obligation of the defendant in the building and maintenance of public crossings. If negligence is to be predicated upon this act, upon the manner in which the crossing was constructed and maintained, it is important to know what duty the defendant owed with respect to the construction and maintenance of these crossings. If it owed a duty to the traveling public, a failure to discharge the duty, followed by injury as a proximate result of such failure, would lay a basis for recovery. But what was the duty it owed to the traveling public? Nowhere in the instructions does the court tell the jury what the duty was. It is the duty of the court to instruct the

jury as to the law which, applied to the facts found by the jury, may or may not justify them in saying the defendant was culpably negligent.

It is true that, as to some of the instructions we have referred to, no exceptions were taken by the defendant before the instructions were read: that is, no objections were taken to the instructions specifically; but, inasmuch as counsel for the defendant requested the court to withdraw this issue from the consideration of the jury, excepted to its refusal to do so, and objected to the court's submitting it to the jury, in its instructions, as an issue upon which negligence could be predicated, we think that the whole question as to the action of the court in submitting this as an issue, and the manner of its submission, is properly here for consideration.

This brings the question before us, Was the evidence sufficient to justify a jury in saying that the defendant had failed in the construction of this crossing to make it a sufficient and safe crossing, such as the statute requires?

There is no evidence as to when this crossing was constructed. There is no evidence as to its condition at any time prior to this accident. There is no controversy in the evidence as to the condition of the crossing and the manner of its construction at that time. All the witnesses agree, so far as they testified on this point, that there was but a slight grade, as you approached the tracks; that the crossing was fully planked between the rails and outside the rails with planks from two to three inches thick. The negligence in the construction is predicated on the fact that the top of the highway on the north and south of the planks was just the thickness of a plank below the top of the planks, whether this plank be two or three inches.

While it is true that, under this statute, a duty rested on the company to construct a good, sufficient, and safe crossing, and that a neglect to discharge this duty would

render the company liable for all damages sustained by the neglect, yet we have to say that a railway company is not bound, even under this section, to make the crossing absolutely safe. All that is required of the company is to make it reasonably safe for travel. It has the right to cross the highway with its tracks. It is bound not to unreasonably interfere with the safe travel upon the public highway, in the use of it for its own purposes. To that end, it becomes the duty of the company to make the crossing, over its track, reasonably safe for travelers upon the highway who use it in the usual and ordinary way. That there was an attempt to do this, the record concedes. That the planks used were proper planks to be used for that purpose, must be conceded. That the company had planked between its rails and on either side of its rails with planks from two to three inches thick, the record in this case shows. An accident occurred, and, we may assume, occurred because the engine struck the edges of these planks, and died upon the track. The fact that plaintiff's engine died because of contact with the edge of these planks, from the jolt or jar received from the planks, does not establish that the crossing was negligently constructed. The most that it does prove is that the roadbed on the south side of the planks was from two to three inches below the top of the planks. There being no dispute as to the condition of the crossing, it becomes a question of law whether the defendant violated any duty that it owed to the traveling public in the construction and maintenance of the crossing. It cannot be said to be negligent, unless it owed a duty to construct and maintain a crossing different from what it was at the time of the accident. The defendant's roadbed is a permanent structure. It is laid there to carry heavy loads. It is solid. It must be solid, to perform the purposes for which it is intended. The ties that support the rails extend out on either side of the rails. These

ties are embedded in the ground. These planks were placed upon the ties, the bottom of the planks being on a level with the ground. The ground on either side is necessarily looser and softer than the planks, and more easily worn down. An elevation of from two to three inches between the road surface and the top of the planks does not tend to show negligence, either in the construction or maintenance of the crossing. If we should so hold, then there is scarcely a public highway in the state of Iowa that is in a reasonably safe condition for travel. The company owes only the duty to keep the highway in a reasonably safe condition; to put it in as safe condition as highways usually and ordinarily are kept for travel. It is not bound to make the highway more safe than highways usually and ordinarily are made and kept for travel. The condition shown here did not render travel upon the road greater or more dangerous in its effect upon the traveler than the inequalities of surface found in all the ordinary roads and highways of the country, which no one would claim renders those highways not reasonably safe for ordinary use by the public. From our common observation, we all know that, in nearly every mile of the highways of the country, there are to be found depressions or ridges or other inequalities of surface which do not interfere with the safe use of the highway, when traveled over in the usual and ordinary method, but which are sufficient to jolt vehicles passing over them. The severity of the jolt would depend, of course, largely upon the speed at which the vehicle is moving at the time it passes over. There is no duty resting upon a railway company to keep the surface of the road, at the crossing, so smooth and free from all inequalities that no jar or jolt will be caused by vehicles passing over the crossing. We think the evidence as to the condition of the crossing does not establish such inequality in the surface of the crossing as to interfere with the safe

use of the crossing, when used in the usual and ordinary way. If this is not so, then the railroad company, in the maintenance of crossings, owes a higher duty, in respect to crossings, than anyone ever dreamed was due the public in the maintenance of public highways. In *Taylor v. Long Island R. Co.*, 16 App. Div. 1 (44 N. Y. Supp. 820), the court said:

"The claim is that the plank which formed the approach to the crossing was raised above the surface of the ground about the thickness of the plank itself. * * * The planks themselves were firmly set, and were solid and in good condition. The rise in the plank above the surface of the soil was slight, and we think that the fact that the soil did not come up even with the plank * * * was not such a defect in the approach to the crossing that negligence can be predicated upon it, or that the defendant owed any further duty in this regard to persons making use of the crossing or others. Extraordinary care would hardly suffice to keep the surface of the ground even with the plank, and ceaseless vigilance in precaution would scarcely foresee that an accident would happen from such a cause."

On the question of negligence, and the right of the court to determine whether the act proven constituted negligence, where there is no dispute as to what the facts are which, it is claimed, caused the negligence, the question is for the court. The question of negligence is a mixed question of law and fact, when there is no controversy as to the facts. In such case, it is the duty of the court to instruct the jury whether the facts which the testimony tends to prove will, if found true, constitute the negligence which will sustain the action. *Trow v. Vermont Cent. R. Co.*, 24 Vt. 487; *Filer v. New York Cent. R. Co.*, 49 N. Y. 47; *Greenleaf v. Illinois Cent. R. Co.*, 29 Iowa 36. It is always within the

3. Negligence: undisputed facts.

power, and it is the duty, of the court to instruct the jury whether or not a certain fact, if established, constitutes negligence.

We hold, therefore, that the showing made does not, as a matter of law, establish that the defendant failed to exercise reasonable care in the construction and maintenance of this crossing, and fails to show that the crossing was not in a reasonably safe condition for travel at the time plaintiff received his injuries; and further, that a finding to the contrary would not have support in this record. The court should have sustained defendant's motion to withdraw this issue from the jury at the conclusion of all the evidence, and erred in submitting it to the jury as a basis for recovery.

As to the sufficiency of the evidence to sustain a verdict on the other grounds, we do not now determine. We have no way of determining on which of the issues tendered the verdict is predicated. There was a controversy in the evidence as to the facts upon which the other grounds of negligence are predicated. The jury may have found liability resting upon this ground. They were without a guide as to the duty of the defendant, touching the construction and maintenance of the crossing.

Other matters discussed may not arise in another trial, and we do not discuss them here.

For the error pointed out, in submitting the issue predicating liability on the construction and maintenance of this crossing. the case is reversed.—*Reversed and remanded.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.